**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEPHANIE N. TORRES, | No.    22-16755 |
| Petitioner-Appellant, | D.C. No. 2:21-cv-00743-KJM-CKD |
| v. | |
| MONA D. HOUSTON, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

Submitted August 14, 2023**
San Francisco, California

Before:  CALLAHAN and BADE, Circuit Judges, and ANTOON,*** District Judge.

Stephanie Torres appeals the district court's denial of her petition for a writ

of habeas corpus brought under 28 U.S.C. § 2254.  We have jurisdiction under 28

---

\*        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*        The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

\*\*\*        The Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

U.S.C. §§ 1291 and 2253(a), and we affirm.

We review de novo a district court's denial of a petition for a writ of habeas corpus. *Kipp v. Davis*, 971 F.3d 939, 948 (9th Cir. 2020). Our review is governed by the deferential standards of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") on "any claim that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d).

1.     Under AEDPA, to grant relief in a § 2254 case challenging the sufficiency of the evidence, "we must conclude that the state court's determination that a rational jury could have found that there was sufficient evidence of guilt, i.e., that each required element was proven beyond a reasonable doubt, was objectively unreasonable." *Boyer v. Belleque*, 659 F.3d 957, 965 (9th Cir. 2011). We also "assess whether record evidence is so lacking that habeas relief is merited under *Jackson* [*v. Virginia*] 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979)).

California defines attempted murder as "the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing," considering the defendant's intent as to each alleged victim. *People v. Stone*, 205 P.3d 272, 275 (Cal. 2009) (quoting *People v. Superior Court*, 157 P.3d 1017, 1021 (Cal. 2007)). Torres argues that she did not have the specific intent to

2

kill Deputies Valdes and Thompson because their vehicles were behind Deputy Derbonne's, and she was unaware of them.

Assuming this argument was fairly presented in state court, Torres has consistently stated that she "was being pursued by three deputy vehicles," that she fired with the intention of discouraging "the deputies" from pursuing her, and that she shot "wildly" at the pursuing "police vehicles." Her repeated use of the plural and her admission that she was shooting in a "fast and changing" environment, when considered alongside the considerable deference we owe state court judgments under AEDPA, confirms the California Court of Appeal's and district court's conclusions that—regardless of Torres's poor aim and failure to actually hit the officers' vehicles—Torres knew about and intended to shoot at Deputies Valdes and Thompson. Moreover, as the district court emphasized, Torres presented no contravening evidence that she would have ceased firing during the pursuit had she hit Deputy Derbonne.

Torres also notes that her cousin, Alfredo Galvan, testified that Torres threatened to shoot "the cop" (singular) if Galvan stopped driving the vehicle in which they were fleeing, and she argues that "the only conclusion that can be inferred" from his testimony is that Torres "did not know [of] the existence of the other two deputies." However, the record indicates that the lead patrol car was swerving in and out and likely exposing the other deputies. Therefore, "viewing

3

the evidence in the light most favorable to the prosecution," *Jackson*, 443 U.S. at 319, it was not "objectively unreasonable" for the state court to "determin[e] that a rational jury could have found that" Torres's actions demonstrated beyond a reasonable doubt an intent to shoot each of the deputies, *Boyer*, 659 F.3d at 965. The evidence presented to the California Court of Appeal was therefore sufficient to support Torres's convictions for the attempted murders of Deputies Valdes and Thompson.

2. We decline to expand the certificate of appealability to include Torres's uncertified claims that her due process rights were violated on the basis of (1) insufficient evidence to support her conviction for the attempted murder of Deputy Derbonne, and (2) insufficient evidence to support a jury instruction on a kill-zone theory, because Torres has not made a "substantial showing of the denial of a constitutional right." *Dixon v. Ryan*, 932 F.3d 789, 808 (9th Cir. 2019) (quoting 28 U.S.C. § 2253(c)(2) and *Slack v. McDaniel*, 529 U.S. 473, 483 (2000)).

In the first uncertified claim, Torres argues that the evidence did not demonstrate her shots were "leveled" at Deputy Derbonne's car or his person; rather, she contends the evidence at most proves she had a conscious disregard for human life when she was firing "wildly" at the "pursuing, moving, and swerving police vehicles." The jury was presented with evidence that Deputy Derbonne was

closest to the fleeing vehicle when the shots were fired, he could see and hear the gunfire, and Torres ordered her cousin not to stop their vehicle or else she would kill "the cop." Torres's failure to hit Deputy Derbonne does not undermine the reasonable conclusion that she intended to kill him. *See Jackson*, 443 U.S. at 319.

In the second uncertified claim, the California Court of Appeal and district court properly concluded that the jury was not asked to determine the case on a kill-zone theory. And, even if it were, there was sufficient evidence for the jury to reasonably infer that Torres intended to create a kill zone around Deputy Derbonne given her indiscriminate shooting. *See People v. Canizales*, 442 P.3d 686, 694 (Cal. 2019). Finally, even assuming the kill-zone theory was presented to the jury *and* there was insufficient evidence to support it, "'jurors are well equipped to analyze the evidence,' [so] we can be confident that the jury chose to rest its verdict on the object that was supported by sufficient evidence, rather than the object that was not." *United States v. Gonzalez*, 906 F.3d 784, 791 (9th Cir. 2018) (emphasis omitted) (quoting *Griffin v. United States*, 502 U.S. 46, 59 (1991)).

**AFFIRMED.**